The Honorable Lance Reynolds State Representative Post Office Box 477 Quitman, Arkansas 72131-0477
Dear Representative Reynolds:
I am writing in response to your request for an opinion on whether A.C.A. § 14-42-108 presents any problem to the planned sale by the City of Act 9 bond property to a private corporation for a nominal consideration under an option to purchase contained in a lease agreement. Your request presents a follow-up question in the wake of Op. Att'y Gen. 2007-220. In that opinion, it was unclear to which statute your question intended to refer. I opined, in any event, that state law did not require any bidding procedure in connection with the exercise of a previously-agreed upon option to purchase and assuming the transaction was executed as a typical Act 9 bond project (in compliance with that Act and other applicable statutes), I could not state that a nominal consideration for the transfer would violate state statutes. You now have clarified and correctly stated the statute giving rise to your concern and pose the following facts and question:
 Approximately 30 years ago, the city of Heber Springs leased both real property and the structure thereon to a private corporation. A provision in that lease stated that the private corporation would have the option to purchase said real property the structure [sic] for a nominal amount after the bonds satisfied. Now the bonds are satisfied, the successor of the private corporation wants to exercise its option and buy the property as it is relocating out of the city. *Page 2 
 Does Arkansas Code Ann. § 14-42-108 present any problem to the City of Heber Springs in conjunction with the sale of this property to private corporation [sic] considering there is nominal monetary consideration? (Additional consideration of course was the past economic benefit the city received by having the private corporation doing business in Heber Springs.)
 Does any other Code Section of applicable law prevent the City of Heber Springs from selling this property?
RESPONSE
As I stated in Op. Att'y Gen. 2007-220, I have not reviewed any of the documents in question and am not in possession of all the facts surrounding the transaction. I thus cannot give a definitive conclusion as to this particular property. The city must look to its city attorney or other retained counsel in that regard. In my opinion, however, A.C.A. § 14-42-108 does not generally stand as a barrier to the exercise of a nominal consideration option to purchase exercised in connection with an Act 9 bond project that otherwise complies with all the provisions of that Act and state law.
The statute you have cited provides in relevant part as follows:
 (b)(1) It shall be unlawful for any city official or employee of any municipal corporation in this state to furnish or give to any person, concerns, or corporations any property belonging to the municipal corporation, or service from any public utility owned or operated by the municipal corporation, unless payment is made therefor to the municipal corporation at the usual and regular rates, and in the usual manner, except as provided in subsection (a) of this section.[1]
 * * * *Page 3 (c)(1) Any person violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not less than ten dollars ($10.00) nor more than two hundred fifty dollars ($250).
 (2) Conviction shall ipso facto remove the official or employee from the municipal office or position held by him and shall render him ineligible to thereafter hold any office or position under, or in connection with, the municipal corporation.
Your concern is apparently the prohibition in (b)(1) above, against the furnishing or giving of municipal property to corporations unless payment is made at the "usual rates" and in the "usual manner." As an initial matter, it may be debated whether the exercise of an option to purchase in connection with Act 9 bond property, even for a nominal consideration, amounts to the "furnishing" or "giving" of property to the corporation, or is factually "unusual" in amount or manner so as to transgress this provision. See, e.g., City of Fort Smith v. Daniels,supra (mentioning a nominal $100 consideration for purchase of the Act 9 bond property at issue in that case); Green v. City of MountPleasant, 256 Iowa 1184, 131 N.W.2d 5 (1964) (upholding an option to purchase for a nominal sum in connection with industrial revenue bond lease agreement); State ex rel. County Court of Mineral County v.Bane, 148 W.Va. 392, 135 S.E.2d 349 (1964) (same); Bennett v. City ofMayfield, 323 S.W.2d 573 (Ky. 1959) (same); and Darnell v. County ofMontgomery, 202 Tenn. 560, 308 S.W.2d 373 (1957) (same).
It is not necessary to address that issue in my opinion, however, in light of the superseding nature of the provisions of Act 9. As noted in Op. Att'y. Gen. 2007-220, this law authorizes cities and counties to "own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, or contract concerning, or otherwise deal inor dispose of, any land, buildings, or facilities of any and every nature whatever that can be used in securing or developing industry within or near the municipality or county." A.C.A. § 14-164-205. (Emphasis added). The term "lease" as used above, is defined as including "the granting of purchase options for such prices and upon such terms and conditions as the municipality or county shall determine." A.C.A. § 14-164-203(6). In addition, § 14-164-204 of the subchapter provides as follows: *Page 4 
 This subchapter shall be liberally construed to accomplish its intent and purposes and shall be the sole authority required for the accomplishment of its purpose. To this end, it shall not be necessary to comply with general provisions of other laws dealing with public facilities, their acquisition, construction, leasing, encumbering, or disposition.
(Emphasis added).
As noted in Op. Att'y Gen. 2007-220, this provision formed a basis for the Arkansas Supreme Court's decision in Dumas v. Jerry, 257 Ark. 1031,521 S.W.2d 539 (1975). In Dumas, the Arkansas Supreme Court held that county bidding procedures (A.C.A. § 14-16-105), were not applicable to the later lease and option to purchase of Act 9 bond property donated by a private corporation to the county. The court held that the county bidding procedures were in irreconcilable conflict with the provisions of Act 9, which allow the sale or lease of property upon such terms as the political subdivision shall determine. Because Act 9 was the latter act, its provisions were deemed controlling.
Your question involves a municipality, not a county such as the one at issue in Dumas v. Jerry. Act 9 of 1960 covers both entities equally, however. See, e.g., Daniels v. City of Fort Smith, 268 Ark. 157,594 S.W.2d 238 (1980) (concluding with regard to a city that Act 9 superseded the latter-adopted provisions of A.C.A. § 22-9-301, which requires payment of the prevailing minimum wage to workers on certain public projects).
In my opinion, therefore, to the extent A.C.A. § 14-42-108 stands as any obstacle (a question I do not find it necessary to decide herein), A.C.A. § 14-164-201224 supersedes that law with respect to Act 9 bond projects and property.
Additionally, as stated in Op. Att'y Gen. 2007-220, assuming the bonds were issued and the transaction was structured as a typical Act 9 bond project and in compliance with that Act, I cannot conclude that a nominal consideration for exercising the option to purchase is prohibited by any other statute.
Again, however, as noted above, I have not been provided with any of the applicable documents or surrounding facts in this regard. Although I have set out some discussion of the interplay of the applicable state statutes, to the extent the *Page 5 
City needs legal advice on the particular transaction in question, it should look to its city attorney or other retained counsel.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection (a)(2) excepts ". . . rights to free or other special services given to certain municipal officials and employees under the terms of franchises in effect with public utilities in this state" and ". . . free streetcar transportation."